MERCER (SMITH v.). See Case No. 13,078.

MERCER (UNITED STATES v.). See Case No. 15,758.

MERCER, The ROBERT J. See Case No. 11,891.

# Case No. 9,434.

## The MERCHANT.

[Abb. Adm. 1; [1] 5 N. Y. Leg. Obs. 363.]

District Court, S. D. New York. May, 1847.

PLEADING IN ADMIRALTY—JOINDER OF CAUSES—WAGES—MONEYS ADVANCED—IN REM—IN PERSONAM—JOINT LIABILITY.

1. A claim for seamen's wages and a claim for moneys advanced to the use of the ship may be united in one action against the ship.

[1] [Reported by Abbott Brothers.]

2. A seaman who claims to recover both for wages and for moneys advanced to the ship's use, may join in a libel in rem with a co-libellant claiming wages only.

3. Where the vessel is liable to two libellants for wages, for which, under the practice of the court in respect to the consolidation of suits, they may be compelled to sue in common, they may join in one action in rem. not only in suing for the common demands, but also in respect to other claims which are peculiar to each.

4. The history of the distinction between proceedings in rem and in personam, reviewed.

[Cited in The Richard Busteed. Case No. 11,-764; The City of Norwalk, 55 Fed. 111.]

5. Where both the vessel and the master or owner are conjointly liable, the personal remedy. and the remedy against the vessel, may be sought in one and the same action.

[Cited in The J. F. Warner, 22 Fed. 344.]

6. Rule 13 of the supreme court interdicts the blending of an action against the owner personally, with one against the vessel, for the recovery of wages.

7. A claim for wages, and for moneys advanced to the use of a vessel on the part of one libellant, cannot be joined, in an action in personam, with a separate claim for wages alone, on the part of another.

This was a joint libel filed by William Johnson and Benjamin Griffiths against the sloop Merchant, in rem, and also in personam, against her master, John Kenan, and her owner, Joshua Jones, to recover wages and for moneys paid to the use of the vessel. The libellant Griffiths, averred in the libel that he was employed on board the sloop, running between New York and Newburg, upon a contract for wages, at $30 per month; and that he served ten days, for which he claimed $10. The libellant Johnson, alleged that he was likewise employed on board the sloop at the same time; that no specific agreement was made with him for wages; that he served for twenty-one days, and that his services were worth $2.25 per day, and he accordingly claimed for them $47.25. He also showed that he had made advances of cash for the use and service of the vessel, amounting to $83.75, for which he claimed to recover. The libel prayed a decree against the vessel, and also against the master and against the owner.

The owner filed the following exceptions to the libel:—(1) That a demand for wages and a demand for moneys advanced to the use of the vessel, could not be joined in one libel; and that at least they could not be prosecuted in rem and in personam, in one action. (2) That a suit for wages could not be maintained against the vessel, master, and owner, conjointly. (3) That the demands of the two libellants could not be joined in one action in personam against the respondents.

The cause now came before the court upon these exceptions.

Edwin Burr, in support of the exceptions.
Alanson Nash, opposed.

BETTS, District Judge. The strict rules of the common law in respect to the unity of the cause of action, or the community of interest or of responsibility of parties to actions, are not observed in the maritime courts. The practice in those courts is at least as liberal and comprehensive as that pursued in equity. In admiralty, the libel or petition is employed to present the case of the prosecutor upon which he desires the interposition of the court in his behalf. Such a case may be composed of wrongs to the person of the prosecutor or to his property, or of a breach of contract, or of omission to do what he is rightfully and equitably entitled to have performed. The libellant Johnson, can accordingly properly bring his single action in this court, for wages earned, and materials and supplies furnished the vessel, provided he establishes a case falling within the jurisdiction of the court; and in that respect his remedy would be the same whether he prosecuted the vessel in rem or the parties liable to him in personam. The admiralty adopts the rule of the civil law, respecting the cumulation of actions (1 Browne, Civ. Law, 446), to avoid multiplicity of suits. Griffiths has not a right concurrent with Johnson in the whole subject-matter in suit, but their demands are of the same kind, so far as wages are concerned, the libellants having both served at the same time on board this vessel, although not for equal periods.

From this view of the subject, it follows that had these libellants commenced separate actions against the vessel for their wages, the court, at the instance of the respondents, would have compelled a consolidation, as contemplated by the act of July 20, 1790 (1 Stat. 133, c. 29, § 6), which prescribes that in this class of cases, "all the seamen or mariners (having cause of complaint of the like kind against the same ship or vessel), shall be joined as complainants;" or, would have prohibited the recovery of costs in more than one suit; and as in such case the contestation of the claims of each libellant is separate, as much so as if those claims were prosecuted in distinct actions, there would be neither incongruity nor inconvenience in permitting the libellants to connect with their several claims of wages such other demands as each party might be allowed to charge upon the vessel; and accordingly, the actions being united for one purpose, there would be no just ground of exception that in other respects each embraced particulars which could not be of themselves the subjects of a joint suit. Assuming that Johnson has a lien on the vessel for wages and money advanced for her necessities, and Griffiths a lien in common with him for wages only, I think no exception lies to the joinder of both demands in one libel. For the vessel being deemed liable to both for the wages, which must be sued for in common, each party may fitly pursue against her in the same action such other demands as are peculiar to himself. It is not to be sup-

posed that congress intended by that enactment to save vessels and owners from multiplicity of actions for wages, by interfering with and inhibiting the right of each seaman, as it exists at law, to connect other demands with his individual suit for wages.

A greater difficulty is presented by the other aspect of the first exception; whether these different demands can be prosecuted in personam against the respondents by joint action. The admiralty had an established jurisdiction in personam over matters falling within its cognizance, long before a remedy was afforded in rem, other than upon express hypothecations. Browne supposes that suits were originally in rem on the instance side of the court. 2 Browne, Civ. Law, 396, note. The remedy in rem is undoubtedly the more useful and desirable one, but there are no traces of its exercise in the English admiralty until long after actions in personam had been of common use. Godolphin, in his Treatise on the Jurisdiction of the Admiralty, published in 1661, points out the method in which the jurisdiction was exercised, as derived from the Consolato del Mare. He says the proceedings were summary, by warrant of arrest, and caution for the appearance of the party arrested. Godol. Adm. Jur. 41. So, also, it manifestly appears in the stipulation between the law judges and judge in admiralty, of May 15, 1575 (Zouch, Adm. 120), that the arrangement of jurisdiction had relation to its exercise in the arrest of the party alone. Throughout the first thirty chapters of the Consolato del Mare, which have relation to the enforcement of maritime contracts, the proceedings of the consular courts and courts of appeal are by personal summons or citation of the parties sought to be charged, and by decrees against them personally; which, like our judgments at law, could be executed upon the property of the debtor (2 Consol. del Mare, par Boucher, 9, 33), and in the subsequent chapters, in which provision is made for the sale of vessels to satisfy what are now regarded as maritime liens, it is at best equivocal whether the sales were not made by force of executions on judgments or decrees first obtained in personal suits, and not by the direct condemnation of the vessels or merchandise. So Clarke, in his Admiralty Practice, does not, as Browne intimates, merely treat first of proceedings in personam, but he views the process against vessels and property by warrant of arrest or sequestration, as auxiliary only to the suit in personam, and employed to constrain the appearance of the real party to be charged (title 28, and Oughton's Notes), and this was clearly so by the civil law (Wood, Civ. Law, bk. 4, c. 3, § 2).

The method of initiating suits in the English admiralty by arrest of the vessel, is declared to be of ancient use (The Dundee, 1 Hagg. Adm. 124; 2 Chit. Prac. 536), but at what point of antiquity it became a remedy

of the court, is not traceable from the published decisions or rules. Evidently it must have been posterior to the compilation of Clarke's Praxis in the reign of Elizabeth, and which was first published in 1679,—Brevoor v. The Fair American [Case No. 1,847],—because that form of action is not treated of by Clarke. Title 28 of his work has reference to proceedings against property to compel the appearance in personam of the respondent.

There is certainly no clear authority showing that actions in rem preceded those in personam, as the general means of exercising the jurisdiction of the court; far less is there any to prove that the latter class of actions derived their qualities from the processes or rules of pleading employed in the former. Each form of action is distinct and independent of the other in respect to the methods of procedure employed, and (with a few exceptions) in respect to jurisdiction over the subject-matter upon which they may act. Suits in rem and in personam are by no means convertible, and if in some instances they are concurrent, there are numerous cases in which one must be employed to the exclusion of the other. Willard v. Dorr [Case No. 17,679]; The Packet [Id. 10,654]; Hammond v. Essex Fire & Marine Ins. Co. [Id. 6,001]; The George [Id. 5,329]; The Grand Turk [Id. 5,683]; The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175; Drinkwater v. The Spartan [Case No. 4,085]. It therefore does not follow that because these libellants may, or even must join in an action for wages against a vessel, that the like rule applies when the prosecution is in personam alone. These observations are intended to meet that part of the argument which regards the proceedings in this case as two separate suits, each of which is to be upheld or discharged upon principles applicable to it if prosecuted as a sole action; and they are made for the purpose of limiting the operation of the decision to the present case as it stands upon the pleadings.

The practice in this district has always sanctioned a proceeding conjointly in rem and in personam in cases where the party was entitled to the public remedy. See the case of The Zenobia [Case No. 18,208], decided in this court in July, 1847. Betts, Adm. 20. Such it is believed is the common course of admiralty courts in the United States. Abb. Shipp. 783, and note. This avoids multiplicity of suits, and saves needless repetitions of proofs and discussions, because the same facts, and between the same parties, must be in contestation in each action. In the instance of seamen suing for wages, the same libel was allowed to pray the arrest and condemnation of the vessel, etc., etc., and process and a decree against the master and owner, to satisfy the wages in arrear. The like result is obtained in the English admiralty, by compelling the parties chargeable personally to come into the suit in rem, and give their absolute appearance. This subjects them and their sureties to satisfy the

decree of the court (The St. Johan, 1 Hagg. Adm. 334), and is equivalent to an arrest and decree in personam. In this case, accordingly, the proceeding in personam is not to be regarded as an independent action, subject to the rules which would govern it in that form, but as auxiliary and concomitant to the suit in rem for wages, which must then be conducted in the name of both parties, and may have also the advantage of a personal decree at the same time.

But it is argued that, in this point of view, the libellants had no authority to unite the owner and master with the vessel; rule 13 of the supreme court, declaring that, "in all suits for mariners' wages, the libellants may proceed against the ship, freight, and master, or against the owner and master alone in personam." Although the question of who may be responsible to a demand is one of general jurisprudence, yet the form and the arrangement of process by which the obligation is to be enforced, is matter of practice. And, according to the provisions of the act of congress of August 23, 1842, the supreme court is vested with authority to impose on inferior courts an absolute law in this respect (5 Stat. 518, § 6), and the court, under that power having proceeded to regulate this subject-matter, their regulation must be regarded complete and exclusive, inhibiting what it does not allow, as well as governing what is fixed by positive appointment. Gibbons v. Ogden, 1 Wheat. [14 U. S.] 1. The remedy, therefore, in admiralty, must be in conformity to the direction of the supreme court rules; and rule 13, must, I apprehend, be accepted as having determined this point, whether regarded as matter of practice or pleading, by designating the methods in which this remedy is to be pursued, and thus also excluding all others. At least, it limits the scope of actions in rem and personam conjointly, when prosecuted for the recovery of wages, to the vessel, freight, and master, deferring the remedy in personam to a separate suit, where the owner is made a party. It is difficult to perceive the policy which induced this change of practice, or why the owner is not as aptly connected with the vessel as the master, in a proceeding involving their common liability, particularly when that of the owner is primary and coupled with an interest, whilst that of the master is only incidental to his office. That this distinction of actions is, however, considerately made, is obvious from rules 12, 14–17, and I feel constrained to say, that suitors are by force of rule 13, now interdicted from blending an action against the owner personally with one against the vessel, for the recovery of wages. The second exception must, accordingly, be allowed in favor of the respondents.

The third exception is overruled. The two seamen can rightfully join in a prosecution for wages, and each is entitled to unite with his demand other claims in his behalf, being liens on the vessel. This exception is not extended to the joinder of the master and owner with the proceeding in rem. The exception, however, raises the general question whether the libellants can proceed jointly against the master and owner, in personam, for the demands put forth by the libel. Clearly, at common law, parties must show a common interest in the subject-matter of the suit, to be enabled to prosecute it in their joint names. It is not sufficient that their respective claims are of the same character or kind, upon contracts express or implied, liens or other liabilities; but it must furthermore appear that each plaintiff is entitled to a common share in the recovery. 1 Chit. Pl. 8. The same is the case in equity, and a demurrer will lie for multifariousness for joining parties who have distinct interests. Edw. Parties, 10; Story, Eq. Pl. § 279; Yeaton v. Lenox, 8 Pet. [33 U. S.] 123. The civil law does not seem to have laid down rules in relation merely to parties uniting in an action, although it did regulate the joinder of different causes of action in one suit; usually prohibiting the union of remedies which were dissimilar in kind (24 Poth. Pand. 368; Dig. lib. 50, tit. 17, art. 431; Wood, Civ. Law, 372), but permitting to be embraced, in one libel, demands arising from different sources, as from personal obligation, hypothecation, &c. Code, lib. 7, tit. 40. Nor do I find that the practice of ecclesiastical courts made provisions specifically, respecting omitting or bringing into suits a multiplicity of parties. 2 Chit. Gen. Prac. 481–489.

The principles and doctrines of the general law ought, accordingly, to be applied to proceedings in admiralty, ex contractu, so far as they govern methods of pleading. This is clearly so, as to the essential components of a libel, plea or exception; and the convenience and usefulness of conformity, in the structure of proceedings in the different courts, is a persuasive reason for adhering to the well-defined and understood course of other courts, in the pleadings in admiralty, and would induce the court to be readily guided by those rules, when not infringing any principle or object of the remedies obtaining here. In this view of the subject, I am inclined to think actions in personam in admiralty ex contractu et è diverso intuitu, must be governed by the rules applicable to them in other courts in respect to the competency of parties to unite in their prosecution; and that the present case is clearly one in which such joinder could not be allowed, if the suits had been against the respondents solely. In actions in tort, the rule is different. American Ins. Co. v. Johnson [Case No. 303]; The Amiable Nancy [Id. 331]; same case, 3 Wheat. [16 U. S.] 546.

I do not intend in this case, to decide that the crews of sea-going vessels must sever in actions for their wages earned on a common voyage; or that parties whose rights spring out of a common cause of action must do so; but shall leave these questions to be disposed

of as they may arise. But engagements for services on board river craft navigating between ports of this state, and for different periods, and at different wages, ought not to be distinguished in the modes of prosecution in this court against parties personally, from like suits in the courts of law. Questions have been raised and argued, upon the import and effect of the supreme court rules 12, 14–17; but, as they do not bear upon the points now decided further than has been already noticed, I shall forbear any remark upon them, other than to say that a remedy for supplies or materials furnished the vessel cannot be had against the master and owner, in connection with the vessel, but only against one of them. Rule 12.

The decision of the court upon the exceptions is: (1) That these libellants cannot maintain a joint action, in personam, solely upon the matter set forth in the libel. (2) That the libel is maintainable against the vessel in rem, in behalf of both parties, and that a decree may be taken for wages against both the vessel and master. (3) That no recovery or decree can be had in this form of the action against the owner. (4) That Johnson can have a decree for supplies, &c., against the vessel, and against either the master or owner at his election, but not against both.

Decree to be entered accordingly.